IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| 20/20 VISION CENTER, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. |
| | ) | |
| DIGITALOPTOMETRICS LLC, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, 20/20 VISION CENTER, LLC ("20/20 Vision" or "Plaintiff"), by and through undersigned counsel, hereby files its Complaint for Patent Infringement against DIGITALOPTOMETRICS LLC ("DigitalOptometrics" or "Defendant"), and, in support thereof, alleges as follows:

**JURISDICTION, VENUE, AND THE PARTIES**

1.      This is an action brought pursuant to the Patent Laws of the United States, 35 U.S.C. §§ 271, *et seq*.

2.      This Court has original jurisdiction pursuant to Title 28, United States Code, Sections 1331 and 1338, as this case involves patent infringement and federal questions arising under the Constitution, laws, or treaties of the United States.

3.      At all times material hereto, 20/20 Vision had and has its principal address located in Holbrook, New York.

4.      At all times material hereto, DigitalOptometrics is a Delaware limited liability company, and has its principal address located in Lake Success, New York.

5. This action arises as a result of the infringing conduct of DigitalOptometrics, which implicates interstate commerce.

6. Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§ 1391(b) and (c) because DigitalOptometrics "resides" in this judicial district, as the term "reside" is interpreted under Chapter 87 of the United States Code, and because a substantial part of the events giving rise to the infringement claims at issue occurred within this judicial district. Venue is also appropriate pursuant to 28 U.S.C. § 1400(b), which provides, in part, that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides."

7. All conditions precedent have been met, waived, and/or satisfied to bring this lawsuit.

**GENERAL ALLEGATIONS**
**20/20 VISION AND ITS INNOVATIVE SYSTEM**

8. 20/20 Vision is a New York based company and the owner of the federally registered 20/20NOW trademark and uses said mark to market and sell its services throughout the United States.

9. Moreover, 20/20 Vision is a well-established and highly regarded provider of optometric services whose work in the industry of tele-optometry continually assists patients in need of eye-care services.

10. As a leader in this space, 20/20 Vision has dedicated itself to the innovation, development, testing, and perfection of a revolutionary tele-optometry system.

11. To this end, 20/20 Vision, together with its dedicated team of innovators, has been researching and developing cutting-edge and proprietary systems and technology in the field of telehealth products and solutions. After much time, energy, and expense, Plaintiff's vision was

2

fulfilled in the form of its proprietary telemedicine systems and technologies, including the unique and proprietary algorithms, methodologies, and techniques inherent therein.

12. Specifically, 20/20 Vision developed a variety of cutting-edge solutions, including integration of digital ophthalmic equipment, proprietary refraction software, and telecommunications technology, all of which may be collectively configured to enable remotely located eye care professionals to synchronously communicate and interact with a patient in real time, remotely perform a variety of eye health examinations on the same, review and evaluate the results of such examinations, and provide diagnoses and optical prescriptions for the patients (the "20/20 System").

13. In so doing, 20/20 Vision's proprietary system significantly improves the efficiency and flexibility in performing eye examinations, reduces the costs associated therewith, and increases the ability of eye care providers to provide access to vision care to their patients anytime, anywhere.

14. In recognition of this proprietary system, the United States Patent and Trademark Office ("USPTO") issued U.S. Pat. No. 10,714,217 ("the '217 Patent") on July 14, 2020, U.S. Pat. No. 10,734,114 ("the '114 Patent") on August 4, 2020, and U.S. Pat. No. 10,762,994 ("the '994 Patent") on September 1, 2020 (collectively, the "20/20 Patents"), with all claiming a priority date of November 6, 2013.

15. At the backbone of 20/20 Vision's success is its core philosophy: by revolutionizing the eye health industry via the creation of new telemedicine systems and technologies, patients will be best served due to the resulting increase in accessible, affordable, and convenient care, as well as the greater flexibility and efficiency generated for licensed eye health providers.

16.     With over 500 installations offering the cutting-edge and patented 20/20 System, 20/20 Vision has performed more than 3.5 million eye examinations throughout the United States, bringing clarity and convenience to many who would otherwise never see the difference an eye exam could make.

## 20/20 VISION'S INTELLECTUAL PROPERTY

17.     20/20 Vision is the owner by assignment of the 20/20 Patents.

18.     As such, 20/20 Vision has the exclusive right to, *inter alia*, collect revenues and profits derived from the 20/20 Patents, to exclude others from making, using, offering for sale, selling, and importing into the United States any goods or services that practice the 20/20 Patents, as well as controlling all aspects of licensing the aforementioned rights.

19.     Generally speaking, the 20/20 Patents are directed to, *inter alia*, telehealth systems configured to provide remote eye health and visual examinations. For instance, certain embodiments of the invention disclosed therein include one or more diagnostic centers having ophthalmic equipment, such as a digital phoropter, auto-refractor or auto-lensometer, connected to an equipment controller, thereby enabling the same to be remotely controlled by one or more healthcare professionals for the administration of various eye health examinations.

20.     In at least one embodiment of the 20/20 Patents, a patient and/or customer at a diagnostic center *e.g.*, an examination site, may receive an eye examination from a combination of individuals, including for example: (1) an onsite individual who may administer one or more tests to the customer, such as certain objective tests; (2) a first remote individual who may remotely operate the ophthalmic equipment using a remote device to administer one or more tests to the customer, such as certain subjective tests; and (3) a second remote individual who may also remotely operate the ophthalmic equipment using a remote device to administer one or more tests

to the customer, such as certain subjective tests. In various embodiments, at least one of the first and second remote individuals may be placed in real-time video conference with the customer, such that the customer and the first and/or second remote individual may communicate in a synchronous environment.

21.    In the provision of eye health examinations, it is well known there are two separate types of tests that must be performed. The first are objective tests which use machines to determine objective data about the patient, such as through an auto-refractor, which measures the patient's objective refractive error, or through a lensometer, which measure the objective power of a patient's current spectacle lenses. The other type of tests are subjective tests, in which a patient is provided with a set of lenses or other variables and prompted, via questions and answers, to identify the patient's visual acuity. Various embodiments of the 20/20 Patents are directed to each such type of examination by the use of 20/20 Vision's digital ophthalmic equipment, proprietary refraction software, and telecommunications technology.

22.    In certain other embodiments of the 20/20 Patents, the server connecting the diagnostic center with first and/or second remote individuals may be configured to track various availability data associated with the remote individuals – *e.g.*, whether the remote individuals are available to conduct an examination. Using such availability data, such server may thus identify the remote individuals that are logged into the web-based platform and available to perform certain remote eye health examinations for the customer, thus minimizing customer wait time and increasing efficiency.

23.    Also, in certain embodiments, at the conclusion of the eye health examinations, at least one of the remote doctors may review the data generated therefrom to generate evaluation data, such as a prescription or diagnosis, to be conveyed to the customer.

5

**DIGITALOPTOMETRICS' INFRINGING TELE-OPTOMETRY SYSTEM**

24.     As advertised on its website located at https://digitaloptometrics.com/, DigitalOptometrics is in the eye care business, such that it provides tele-optometry services across the country through which it markets, offers for sale, and sells certain eye health services, including vision screenings and eye health examinations via tele-optometry.

25.     DigitalOptometrics offers tele-optometry services through which a patient and/or customer may be treated by remote eye professionals and practitioners.

26.     On information and belief, DigitalOptometrics' tele-optometry system enables eye care professionals and practitioners to remotely perform eye examinations through remotely operated ophthalmic equipment. In conjunction therewith, the eye care professional and practitioners of DigitalOptometrics' system are placed in a real-time video conference with the patient.

27.     On information and belief, the Accused System is configured to perform five disparate steps.

28.     The first step includes the collection of the patient's information through a tablet kiosk, wherein the patient answers a variety of questions relating to his or her medical history.

29.     The second step requires the provision of a visual pre-screening through an onsite individual, wherein the onsite individual performs one or more objective tests, including autorefraction and lensometry.

30.     The third step requires the provision of a subjective refraction examination, wherein a remote eye health professional and/or technician appears in a real-time video conference with the patient to perform a subjective examination of the patient using remotely controlled ophthalmic equipment.

31.     Next, an eyecare professional or practitioner reviews the results of the eye health examinations, who may remotely perform additional examinations through the remote control of the ophthalmic equipment.

32.     Finally, the eye care professional or practitioner may provide a prescription and/or diagnosis (cumulatively, the "Accused System"). *See **Exhibit 1***, DigitalOptometrics' Tele-Optometry Examination Steps.

33.     In view of the above, and on information and belief, the Accused System includes a diagnostic center – *e.g.*, an examination site – at which a patient may receive at least one eye health examination through remotely controlled ophthalmic equipment operated by an equipment controller that enables one or more remote individuals to operate the same.

34.     On information and belief, the Accused System includes at least one onsite device operated by an onsite individual for the performance of objective examinations.

35.     On information and belief, the Accused System includes at least two remote individuals – *i.e.*, an eye health technician and an eye health practitioner – each of whom may remotely control the ophthalmic equipment for the performance of subjective examinations.

36.     On information and belief, the ophthalmic equipment of the Accused System is remotely controlled via at least one remote device, such as a personal computer, laptop, and/or mobile device, through which one or more of the remote individuals may issue commands to the equipment controller through a graphical user interface provided on such remote device(s), with the end result being the control of the ophthalmic equipment located at the diagnostic center. On information and belief, the Accused System further includes a computer server connecting the diagnostic center with the remote device(s) used by the remote individual(s).

37.    On information and belief, the ophthalmic equipment utilized in the Accused System includes a remotely controlled digital phoropter, auto-refractor, and an auto-lensometer, which is a necessary component to remotely perform a subjective refraction examination.

38.    On information and belief, the Accused System tracks and utilizes availability data to identify one or more remote individuals who are available to provide an eye health examination to a patient and/or customer.

39.    On information and belief, the provision of the eye health examinations through the Accused System results in the generation of evaluation data, including, without limitation, a prescription, diagnosis, and/or referral.

40.    DigitalOptometrics continues to use the Accused System in connection with its provision of tele-optometry services.

41.    On information and belief, DigitalOptometrics was aware of the 20/20 Patents at the time of implementing the Accused System by virtue of the 20/20 Patents claiming priority to earlier patents, namely, U.S. Pat. No. 9,230,062 ("the '062 Patent" or "Parent Patent").

42.    DigitalOptometrics offers its Accused System through certain local retailers. For example, DigitalOptometrics' own website indicates that it provides services through locations located throughout the United States. *See Exhibit 2*, DigitalOptometrics Locations. As one example, DigitalOptometrics provides its services through Miami Optical Boutique, located at 1440 NW N River Drive #355, Miami, FL, 33125. *See id.* Miami Optical Boutique is a retailer of eyeglasses and other such goods, and a provider of eye care services including, without limitation, digital optometry services. *See Exhibit 3*, Miami Optical Boutique Webpage.

43.     As a result, DigitalOptometrics has infringed and continues to infringe upon at least one claim of the '217 Patent, at least one claim of the '114 Patent, and at least one claim of the '994 Patent by making, using, selling, or offering for sale the Accused System, or otherwise enabling others to make, use, sell, or offer for sale the Accused System.

## THE 20/20 PATENTS

44.     On July 14, 2020, the USPTO issued the '217 Patent, entitled *Systems and Methods for Enabling Customers to Obtain Vision and Eye Health Examinations*. A true and correct copy of the '217 Patent is attached hereto as ***Exhibit 4*** and incorporated by reference.

45.     The '217 Patent describes a tele-optometry system and method that may be implemented at various customer diagnostic centers. Specifically, the '217 Patent describes generation of eye evaluation data through use of an on-site technician and two remote operators to perform eye examinations for customers through the use of ophthalmic equipment, including an auto-phoropter and eye chart, along with a user interface that permits the patient to communicate with the remote operators in real time and for a remote operator to control the vision examination equipment. *See **id.*** at 4:27–59.

46.     The '217 Patent includes two independent claims—Claim 1 and Claim 11—which recite:

\*\*\*

1. A system for providing a remotely assisted eye examination, comprising:
a diagnostic center including ophthalmic equipment comprising a set of instruments that are utilized in administering an eye examination to a customer that includes vision acuity tests, wherein:
an equipment controller is in communication with at least a portion of the ophthalmic equipment and permits multiple individuals to control the ophthalmic equipment during the eye examination;
the equipment controller includes, or communicates with, a vision examination controller that is in communication with vision

examination equipment, the vision examination equipment at least including an auto-phoropter and eye chart;

an onsite device that is operated by an onsite individual located at the diagnostic center;

a first remote device that is operated by a first remote individual;

a second remote device that is operated by a second remote individual; and

wherein the ophthalmic equipment and test administration associated with the eye examination is controlled by each of the onsite individual, the first remote individual, and the second remote individual during the eye examination, and administering the eye examination to the customer at a diagnostic center includes:

establishing, during the eye examination, a first real- time video conference connection between the diagnostic center and the first remote device over a network to enable the first remote individual and the customer to communicate during the eye examination;

establishing, during the eye examination, a second real-time video conference connection between the diagnostic center and the second remote device over the network to enable the second remote individual and the customer to communicate during the eye examination;

receiving, at the equipment controller during the eye examination, commands from the multiple individuals to permit each of the multiple individuals to control the ophthalmic equipment during the eye examination, wherein receiving commands from the multiple individuals includes:

receiving, at the equipment controller during the eye examination, first commands from the first remote device that is operated by the first remote individual located remotely with respect to the diagnostic center, wherein the first commands are transmitted to the equipment controller in response to one or more selections received via a graphical user interface displayed on the first remote device and the first commands are at least utilized by the vision examination controller to control a portion of the vision examination equipment during the eye examination, the first commands being transmitted to the equipment controller over the network and enabling the first remote individual to remotely switch lenses of the auto-phoropter; and

receiving, at the equipment controller during the eye examination, second commands from the second remote device that is operated by the second remote individual located remotely with respect to the diagnostic center, wherein the second commands are transmitted to the equipment controller in response to one or more selections received via a graphical user interface displayed on the second remote device and the second commands are at least utilized by the vision

examination controller to control a portion the vision examination equipment during the eye examination, the second commands being transmitted to the equipment controller over the network;

administering, by the multiple individuals during the eye examination, a plurality of eye tests to the customer during the eye examination based, at least in part, on control of the ophthalmic equipment included in the vision examination equipment, wherein administering the plurality of tests includes:

administering, by the onsite individual, one or more eye tests to the customer;

administering, by the first remote individual over the first real-time video conference connection, one or more eye tests to the customer; and

administering, by the second remote individual over the second real-time video conference connection, one or more eye tests to the customer; and

generating evaluation data based on the plurality of eye tests.

\*\*\*

11. A method for providing a remotely assisted eye examination, comprising:

administering an eye examination to a customer at a diagnostic center including ophthalmic equipment comprising a set of instruments, wherein an equipment controller is in communication with at least a portion of the ophthalmic equipment and permits multiple individuals to control the ophthalmic equipment during the eye examination, and the equipment controller includes, or communicates with a vision examination controller that is in communication with vision examination equipment;

wherein the ophthalmic equipment and test administration associated with the eye examination is controlled by each of an onsite individual operating an onsite device, a first remote individual operating a first remote device, and a second remote individual operating a second remote device-, and administering the eye examination to the customer at the diagnostic center includes:

establishing, during the eye examination, a first real-time video conference connection between the diagnostic center and the first remote device over a network to enable the first remote individual and the customer to communicate during the eye examination;

establishing, during the eye examination, a second real-time video conference connection between the diagnostic center and the second remote device over the network to enable the second remote individual and the customer to communicate during the eye examination;

receiving, at the equipment controller during the eye examination, commands from the multiple individuals to permit each of the multiple individuals

11

to control the ophthalmic equipment during the eye examination, wherein receiving commands from the multiple individuals includes:

receiving, at the equipment controller during the eye examination, first commands from the first remote device that is operated by the first remote individual located remotely with respect to the diagnostic center, wherein the first commands are transmitted to the equipment controller in response to one or more selections received via a graphical user interface displayed on the first remote device and the first commands are at least utilized by the vision examination controller to control a portion of the vision examination equipment during the eye examination, the first commands being transmitted to the equipment controller over the network and enabling the first remote individual to remotely switch lenses of the auto-phoropter; and

receiving, at the equipment controller during the eye examination, second commands from the second remote device that is operated by the second remote individual located remotely with respect to the diagnostic center, wherein the second commands are transmitted to the equipment controller in response to one or more selections received via a graphical user interface displayed on the second remote device and the second commands are at least utilized by the vision examination controller to control a portion the vision examination equipment during the eye examination, the second commands being transmitted to the equipment controller over the network;

administering, by the multiple individuals during the eye examination, a plurality of eye tests to the customer during the eye examination based, at least in part, on control of the ophthalmic equipment included in the vision examination equipment, wherein administering the plurality of tests includes:

administering, by the onsite individual, one or more eye tests to the customer;

administering, by the first remote individual over the first real-time video conference connection, one or more eye tests to the customer; and

administering, by the second remote individual over the second real-time video conference connection, one or more eye tests to the customer; and

generating evaluation data based on the plurality of eye tests.

***

47.    In addition to the issuance of the '217 Patent, on August 4, 2020, the USPTO issued

the '114 Patent, entitled *Systems and Methods for Enabling Customers to Obtain Vision and Eye*

12

*Health Examinations*. A true and correct copy of the '114 Patent is attached hereto as ***Exhibit 5*** and incorporated by reference.

48. The '114 Patent describes a tele-optometry system and method that may be implemented at various customer diagnostic centers. Specifically, the '114 Patent describes generation and transmission to a customer of eye evaluation data via an on-site technician and two remote operators to perform eye examinations for customers through the use of ophthalmic equipment, including an auto-phoropter and eye chart, along with a user interface that permits the patient to communicate with the remote operators in real time and for a remote operator to control the vision examination equipment. *See **id.*** at 4:27–59.

49. The '114 Patent includes five independent claims—Claim 1, Claim 10, Claim 19, Claim 20, Claim 21, and Claim 22—which recite:

\*\*\*

1. A system for providing remotely assisted eye examinations, comprising:
a diagnostic center that enables a customer to obtain an eye examination; and
ophthalmic equipment located at the diagnostic center, the ophthalmic equipment
   comprising a set of instruments that are utilized in administering the eye
   examination, wherein at least a portion of the ophthalmic equipment is coupled to
   an equipment controller that is configured
to receive commands over a network to enable remote control of the ophthalmic equipment;
wherein administering the eye examination comprises:
   administering, with the assistance of an on-site individual located at the diagnostic
      center, one or more objective tests using the ophthalmic equipment located
      at the diagnostic center;
   tracking availability data associated with a plurality of remote individuals, the
      availability data at least identifying a set of remote individuals who are
      currently logged into a web-based platform;
   establishing, during the eye examination, a plurality of real-time connections with
      remote devices to enable a plurality of remote individuals to participate in
      the eye examination, wherein establishing the plurality of real-time
      connections at least includes:
      establishing, based at least in part on the availability data, a first real-time
         connection between the diagnostic center and a first remote device
         over the network, the first remote device being operated by a first
         remote individual; and

establishing, based at least in part on the availability data, a second real-time connection between the diagnostic center and a second remote device over the network, the second remote device being operated by a second remote individual;

administering, with the assistance of the first remote individual, one or more subjective tests using the ophthalmic equipment located at the diagnostic center, wherein administering the one or more subjective tests includes:

transmitting, by the first remote device, commands over the network to the equipment controller to permit the first remote individual to remotely control the portion of the ophthalmic equipment located at the diagnostic center during the administration of the one or more subjective tests; and

enabling the first remote individual to view and interact with the customer via the first real-time connection during the administration of the one or more subjective tests;

generating customer examination data based on collected testing data corresponding to both the one or more objective tests administered with the assistance of the on-site operator and the one or more subjective tests administered with the assistance of the first remote individual over the network;

transmitting the customer examination data to the second remote device associated with the second remote individual;

generating, at least in part with the assistance of the second remote individual, evaluation data based on the customer examination data; and

transmitting the evaluation data over the network to the customer located at the diagnostic center;

wherein a subjective portion of the eye examination is performed with the assistance of both the first remote individual and the second remote individual, and both the first remote individual and the second remote individual have the ability to remotely control an auto-phoropter located at the diagnostic center during the eye examination.

\*\*\*

10. A method for providing a remotely assisted eye examination, comprising:

administering an eye examination to a customer at a diagnostic center that includes ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment;

wherein administering the eye examination comprises:

administering, with the assistance of an on-site individual located at the diagnostic center, one or more objective tests using the ophthalmic equipment located at the diagnostic center;

14

tracking availability data associated with a plurality of remote individuals, the availability data at least identifying a set of remote individuals who are currently logged into a web-based platform;

establishing, during the eye examination, a plurality of real-time connections with remote devices to enable a plurality of remote individuals to participate in the eye examination, wherein establishing the plurality of real-time connections at least includes:

establishing, based at least in part on the availability data, a first real-time connection between the diagnostic center and a first remote device over the network, the first remote device being operated by a first remote individual; and

establishing, based at least in part on the availability data, a second real-time connection between the diagnostic center and a second remote device over the network, the second remote device being operated by a second remote individual;

administering, with the assistance of the first remote individual, one or more subjective tests using the ophthalmic equipment located at the diagnostic center, wherein administering the one or more subjective tests includes:

transmitting, by the first remote device, commands over the network to the equipment controller to permit the first remote individual to remotely control the portion of the ophthalmic equipment located at the diagnostic center during the administration of the one or more subjective tests; and

enabling the first remote individual to view and interact with the customer via the first real-time connection during the administration of the one or more subjective tests;

generating customer examination data based on collected testing data corresponding to both the one or more objective tests administered with the assistance of the on-site operator and the one or more subjective tests administered with the assistance of the first remote individual over the network;

transmitting the customer examination data to the second remote device associated with the second remote individual;

generating, at least in part with the assistance of the second remote individual, evaluation data based on the customer examination data; and

transmitting the evaluation data over the network to the customer located at the diagnostic center;

wherein a subjective portion of the eye examination is performed with the assistance of both the first remote individual and the second remote individual, and both the first remote individual and the second remote

15

individual have the ability to remotely control an auto-phoropter located at the diagnostic center during the eye examination.

\*\*\*

19. A system for providing remotely assisted eye examinations, comprising:

a diagnostic center that enables a customer to obtain an eye examination; and

ophthalmic equipment located at the diagnostic center, the ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment;

wherein administering the eye examination comprises:

administering, with the assistance of an on-site individual located at the diagnostic center, one or more objective tests using the ophthalmic equipment located at the diagnostic center;

tracking availability data associated with a plurality of remote individuals, the availability data at least identifying a set of remote individuals who are currently logged into a web-based platform;

establishing, during the eye examination, a plurality of real-time connections with remote devices to enable a plurality of remote individuals to participate in the eye examination, wherein establishing the plurality of real-time connections at least includes:

establishing, based at least in part on the availability data, a first real-time connection between the diagnostic center and a first remote device over the network, the first remote device being operated by a first remote individual; and

establishing, based at least in part on the availability data, a second real-time connection between the diagnostic center and a second remote device over the network, the second remote device being operated by a second remote individual;

administering, with the assistance of the first remote individual, one or more subjective tests using the ophthalmic equipment located at the diagnostic center, wherein administering the one or more subjective tests includes:

transmitting, by the first remote device, commands over the network to the equipment controller to permit the first remote individual to remotely control the portion of the ophthalmic equipment located at the diagnostic center during the administration of the one or more subjective tests; and

16

enabling the first remote individual to view and interact with the customer via the first real-time connection during the administration of the one or more subjective tests;

generating customer examination data based on collected testing data corresponding to both the one or more objective tests administered with the assistance of the on-site operator and the one or more subjective tests administered with the assistance of the first remote individual over the network;

transmitting the customer examination data to the second remote device associated with the second remote individual;

generating, at least in part with the assistance of the second remote individual, evaluation data based on the customer examination data; and

transmitting the evaluation data over the network to the customer located at the diagnostic center;

wherein the eye examination includes an objective portion that utilizes the ophthalmic equipment to derive at least one objective measurement pertaining to the one or more objective tests administered with the assistance of the on-site individual during the eye examination, and a subjective portion that includes outputting one or more questions to the customer and receiving one or more responses from the customer pertaining to the one or more subjective tests administered with the assistance of the first remote individual during the eye examination, wherein the subjective portion of the eye examination is administered, at least in part, by:

presenting questions to the customer based, at least in part, on the collected testing data comprising the at least one objective measurement derived during the objective portion of the eye examination or the one or more responses that are received from the customer;

based on the one or more responses received from the customer, remotely adjusting the ophthalmic equipment utilized in administering the subjective portion of the eye examination based on the commands received over the network from the first remote individual; and

determining that the subjective portion of the eye examination should be concluded in response to establishing that the one or more responses received from the customer satisfy one or more conditions indicating that sufficient data has been collected;

wherein at least a portion of the collected testing data corresponding to the objective portion and subjective portion of the eye examination is packaged with the customer examination data for transmission to the second remote individual;

wherein the second remote device is configured to display one or more interfaces to the second remote individual;

17

wherein the one or more interfaces presented on the second remote device are configured to:

display the customer examination data that was generated with the assistance of both the on-site individual and the first remote individual to permit the second remote individual to review the customer examination data and evaluate whether the one or more subjective tests or one or more objective tests were administered correctly;

enable the second remote individual to remotely control the portion of the ophthalmic equipment that is coupled to the equipment controller, wherein the one or more interfaces include on-screen controls that enable the second remote individual to transmit commands over the network for remotely controlling the portion of the ophthalmic equipment; and

receive selections from the second remote individual to generate the evaluation data.

\*\*\*

20. A system for providing remotely assisted eye examinations, comprising:

a diagnostic center that enables a customer to obtain an eye examination; and

ophthalmic equipment located at the diagnostic center, the ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment;

wherein administering the eye examination comprises:

administering, with the assistance of an on-site individual located at the diagnostic center, one or more objective tests using the ophthalmic equipment located at the diagnostic center;

tracking availability data associated with a plurality of remote individuals, the availability data at least identifying a set of remote individuals who are currently logged into a web-based platform;

establishing, during the eye examination, a plurality of real-time connections with remote devices to enable a plurality of remote individuals to participate in the eye examination, wherein establishing the plurality of real-time connections at least includes:

establishing, based at least in part on the availability data, a first real-time connection between the diagnostic center and a first remote device over the network, the first remote device being operated by a first remote individual; and

establishing, based at least in part on the availability data, a second real-time connection between the diagnostic

18

center and a second remote device over the network, the second remote device being operated by a second remote individual;

administering, with the assistance of the first remote individual, one or more subjective tests using the ophthalmic equipment located at the diagnostic center, wherein administering the one or more subjective tests includes:

transmitting, by the first remote device, commands over the network to the equipment controller to permit the first remote individual to remotely control the portion of the ophthalmic equipment located at the diagnostic center during the administration of the one or more subjective tests; and

enabling the first remote individual to view and interact with the customer via the first real-time connection during the administration of the one or more subjective tests;

generating customer examination data based on collected testing data corresponding to both the one or more objective tests administered with the assistance of the on-site operator and the one or more subjective tests administered with the assistance of the first remote individual over the network;

transmitting the customer examination data to the second remote device associated with the second remote individual;

generating, at least in part with the assistance of the second remote individual, evaluation data based on the customer examination data; and

transmitting the evaluation data over the network to the customer located at the diagnostic center;

wherein:

the ophthalmic equipment includes an auto-phoropter;

the auto-phoropter includes a plurality of lenses;

the auto-phoropter is coupled to the equipment controller;

both the first remote individual and the second remote individual can transmit commands over the network via the first real-time connection and the via the second real-time connection to the equipment controller; and

the commands transmitted over the network via the first real-time connection and the second real-time connection enable the first remote individual and the second remote individual to remotely switch the lenses that are presented to the customer during the eye examination.

\*\*\*

21. A method for providing a remotely assisted eye examination, comprising:

19

administering an eye examination to a customer at a diagnostic center that includes ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment;

wherein administering the eye examination comprises:

administering, with the assistance of an on-site individual located at the diagnostic center, one or more objective tests using the ophthalmic equipment located at the diagnostic center;

tracking availability data associated with a plurality of remote individuals, the availability data at least identifying a set of remote individuals who are currently logged into a web-based platform;

establishing, during the eye examination, a plurality of real-time connections with remote devices to enable a plurality of remote individuals to participate in the eye examination, wherein establishing the plurality of real-time connections at least includes:

establishing, based at least in part on the availability data, a first real-time connection between the diagnostic center and a first remote device over the network, the first remote device being operated by a first remote individual; and

establishing, based at least in part on the availability data, a second real-time connection between the diagnostic center and a second remote device over the network, the second remote device being operated by a second remote individual;

administering, with the assistance of the first remote individual, one or more subjective tests using the ophthalmic equipment located at the diagnostic center, wherein administering the one or more subjective tests includes:

transmitting, by the first remote device, commands over the network to the equipment controller to permit the first remote individual to remotely control the portion of the ophthalmic equipment located at the diagnostic center during the administration of the one or more subjective tests; and

enabling the first remote individual to view and interact with the customer via the first real-time connection during the administration of the one or more subjective tests;

generating customer examination data based on collected testing data corresponding to both the one or more objective tests

20

administered with the assistance of the on-site operator and the one or more subjective tests administered with the assistance of the first remote individual over the network;

transmitting the customer examination data to the second remote device associated with the second remote individual;

generating, at least in part with the assistance of the second remote individual, evaluation data based on the customer examination data; and

transmitting the evaluation data over the network to the customer located at the diagnostic center;

wherein the eye examination includes an objective portion that utilizes the ophthalmic equipment to derive at least one objective measurement pertaining to the one or more objective tests administered with the assistance of the on-site individual during the eye examination, and a subjective portion that includes outputting one or more questions to the customer and receiving one or more responses from the customer pertaining to the one or more subjective tests administered with the assistance of the first remote individual during the eye examination, wherein the subjective portion of the eye examination is administered, at least in part, by:

presenting questions to the customer based, at least in part, on the collected testing data comprising the at least one objective measurement derived during the objective portion of the eye examination or the one or more responses that are received from the customer;

based on the one or more responses received from the customer, remotely adjusting the ophthalmic equipment utilized in administering the subjective portion of the eye examination based on the commands received over the network from the first remote individual; and

determining that the subjective portion of the eye examination should be concluded in response to establishing that the one or more responses received from the customer satisfy one or more conditions indicating that sufficient data has been collected;

wherein at least a portion of the collected testing data corresponding to the objective portion and subjective portion of the eye examination is packaged with the customer examination data for transmission to the second remote individual;

wherein the second remote device is configured to display one or more interfaces to the second remote individual;

wherein the one or more interfaces presented on the second remote device are configured to:

display the customer examination data that was generated with the assistance of both the on-site individual and the first

21

remote individual to permit the second remote individual to review the customer examination data and evaluate whether the one or more subjective tests or one or more objective tests were administered correctly;

enable the second remote individual to remotely control the portion of the ophthalmic equipment that is coupled to the equipment controller, wherein the one or more interfaces include on-screen controls that enable the second remote individual to transmit commands over the network for remotely controlling the portion of the ophthalmic equipment; and

receive selections from the second remote individual to generate the evaluation data.

***

22. A method for providing a remotely assisted eye examination, comprising:

administering an eye examination to a customer at a diagnostic center that includes ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment;

wherein administering the eye examination comprises:

administering, with the assistance of an on-site individual located at the diagnostic center, one or more objective tests using the ophthalmic equipment located at the diagnostic center;

tracking availability data associated with a plurality of remote individuals, the availability data at least identifying a set of remote individuals who are currently logged into a web-based platform;

establishing, during the eye examination, a plurality of real-time connections with remote devices to enable a plurality of remote individuals to participate in the eye examination, wherein establishing the plurality of real-time connections at least includes:

establishing, based at least in part on the availability data, a first real-time connection between the diagnostic center and a first remote device over the network, the first remote device being operated by a first remote individual; and

establishing, based at least in part on the availability data, a second real-time connection between the diagnostic center and a second remote device over the network, the second remote device being operated by a second remote individual;

22

administering, with the assistance of the first remote individual, one or more subjective tests using the ophthalmic equipment located at the diagnostic center, wherein administering the one or more subjective tests includes:

transmitting, by the first remote device, commands over the network to the equipment controller to permit the first remote individual to remotely control the portion of the ophthalmic equipment located at the diagnostic center during the administration of the one or more subjective tests; and

enabling the first remote individual to view and interact with the customer via the first real-time connection during the administration of the one or more subjective tests;

generating customer examination data based on collected testing data corresponding to both the one or more objective tests administered with the assistance of the on-site operator and the one or more subjective tests administered with the assistance of the first remote individual over the network;

transmitting the customer examination data to the second remote device associated with the second remote individual;

generating, at least in part with the assistance of the second remote individual, evaluation data based on the customer examination data· and transmitting the evaluation data over the network to the customer located at the diagnostic center;

wherein:

the ophthalmic equipment includes an auto-phoropter;

the auto-phoropter includes a plurality of lenses;

the auto-phoropter is coupled to the equipment controller;

both the first remote individual and the second remote individual can transmit commands over the network via the first real-time connection and the via the second real-time connection, respectively, to the equipment controller; and

the commands transmitted over the network via the first real-time connection and the second real-time connection enable the first remote individual and the second remote individual, respectively, to remotely switch the lenses that are presented to the customer during the eye examination.

\*\*\*

50.     On September 1, 2020, the USPTO issued the '994 Patent, entitled *Systems and Methods for Enabling Customers to Obtain Vision and Eye Health Examinations*. A true and correct copy of the '994 Patent is attached hereto as ***Exhibit 6*** and incorporated by reference.

51.    The '994 Patent describes a tele-optometry system and method that may be implemented at various customer diagnostic centers. Specifically, the '994 Patent describes generation of eye evaluation data through use of an on-site technician and two remote operators to perform eye examinations for customers through the use of ophthalmic equipment, including an auto-phoropter and eye chart, along with a user interface that permits the patient to communicate with the remote operators in real time and for a remote operator to control the vision examination equipment. See id. at 4:27–59.

52.    The '994 Patent includes two independent claims—Claim 1 and Claim 10—which recite:

***

1. A system for providing a remotely assisted eye examination, comprising:

a diagnostic center including ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment by multiple individuals during the eye examination, and the ophthalmic equipment located at the diagnostic center at least includes an auto-phoropter;

a first remote device operated by a first remote individual; and

a second remote device operated by a second remote individual;

wherein the system is configured to:

establish a first connection between the diagnostic center and the first remote device over the network, wherein the first connection provides real-time video conferencing between the first remote individual and a customer, and the first connection enables the first remote individual to transmit commands over the network to remotely switch one or more lenses of the auto-phoropter;

establish a second connection between the diagnostic center and the second remote device over the network, wherein the second connection provides real-time video conferencing between the second remote individual and the customer, and the second connection enables the second remote individual to transmit commands over the network to remotely control the auto-phoropter;

24

facilitate, with remote assistance from both the first remote individual and the second remote individual, administration of the eye examination to the customer, the eye examination including one or more tests, wherein the equipment controller enables both the first remote individual and second remote individual to control the auto-phoropter during the one or more tests and enables a subjective refraction to be administered to the customer located at the diagnostic center; and

generate evaluation data associated with the eye examination based, at least in part, on at least one of the first remote individual's and the second remote individual's review of the one or more tests administered to the customer.

\*\*\*

10. A method for providing a remotely assisted eye examination, comprising:

administering the eye examination at a diagnostic center including ophthalmic equipment comprising a set of instruments, wherein at least a portion of the ophthalmic equipment is coupled to an equipment controller that is configured to receive commands over a network to enable remote control of the ophthalmic equipment by multiple individuals during the eye examination, and the ophthalmic equipment located at the diagnostic center at least includes an auto-phoropter;

wherein administering the eye examination includes:

establishing a first connection between the diagnostic center and a first remote device over the network, wherein the first connection provides real-time video conferencing between a first remote individual and a customer, and the first connection enables the first remote individual to transmit commands over the network to remotely switch one or more lenses of the auto-phoropter;

establishing a second connection between the diagnostic center and a second remote device over the network, wherein the second connection provides real-time video conferencing between a second remote individual and the customer, and the second connection enables the second remote individual to transmit commands over the network to remotely control the auto-phoropter;

administering, with remote assistance from both the first remote individual and the second remote individual, the eye examination to the customer, the eye examination including one or more tests, wherein the equipment controller enables both the first remote individual and second remote individual to control the auto-phoropter during the one or more tests and enables a subjective refraction to be administered to the customer located at the diagnostic center; and

generating evaluation data associated with the eye examination based, at least in part, on at least one of the first remote individual's and the second remote individual's review of the one or more tests administered to the customer.

\*\*\*

## THE PARENT PATENT TO THE 20/20 PATENTS

53.     On January 5, 2016, the USPTO issued the '062 Patent, entitled *Systems and Methods for Enabling Customers to Obtain Vision and Eye Health Examinations*. A true and correct copy of the '062 Patent is attached hereto as ***Exhibit 7*** and incorporated by reference.

54.     The '062 Patent is the parent patent of the 20/20 Patents and, although it shares some similarities with its child patents, notable differences distinguish the 20/20 Patents from its parent as discussed *infra*.

55.     The '062 Patent includes three independent claims—Claim 1, Claim 13, and Claim 25—which recite:

   \*\*\*

1. A system for providing eye health and vision examinations, comprising:
a plurality of diagnostic centers, each of the diagnostic centers including ophthalmic equipment comprising a set of instruments that are utilized in administering eye examinations and being coupled to an equipment controller that is configured to receive instructions for controlling the ophthalmic equipment, wherein the diagnostic centers are configured to:
transmit requests over a network to select eye-care practitioners to administer the eye examinations in realtime for customers located at the diagnostic centers;
receive instructions over the network to permit the eyecare practitioners to control operation of the ophthalmic equipment at the diagnostic centers from a remote location in order to administer one or more tests pertaining to the eye examinations; and
generate customer examination data pertaining to the one or more tests administered using the ophthalmic equipment;
a plurality of practitioner devices associated with the eyecare practitioners, wherein the practitioner devices are configured to:

26

receive at least a portion of the customer examination data in response to accepting one or more of the requests associated with administering the eye examinations;

display the received customer examination data; and

generate customer evaluation data associated with the one or more accepted requests;

at least one server configured to:

permit the eye-care practitioners to login to a web-based platform to administer the eye examinations to the customers over the network in real-time;

track availability data associated with the eye-care practitioners, the availability data indicating a set of eyecare practitioners who are currently logged into the web-based platform and whether each such eye-care practitioner is currently engaged in providing a realtime eye examination through the web-based platform;

in response to receiving the requests from the diagnostic centers, select a subset of eye-care practitioners to administer the eye examinations based, at least in part, on analyzing the availability data to identify one or more eye-care practitioners who are logged into the web-based platform and not currently providing realtime eye examinations;

administer the one or more tests to the customers during the eye examinations conducted at the diagnostic centers utilizing the ophthalmic equipment, the eye examinations including objective portions that utilize the ophthalmic equipment to derive objective measurements pertaining to the one or more tests and subjective portions that utilize an audio response system that is configured to present questions to and receive responses from the customers pertaining to the one or more tests, wherein the subjective portions of the eye examinations are administered using an iterative process that includes:

selecting questions to present to the customers based on both the objective measurements derived during the objective portions of the eye examinations and the responses that are received from the customers via the audio response system;

based on the responses received from the customers via the audio response system, automatically adjusting the ophthalmic equipment utilized in administering the subjective portion of the eye examination; and

determining that the iterative process should be concluded in response to detecting that a particular combination of the responses received from the customers satisfy one or more conditions indicating that sufficient data has been collected for the subjective portions of the eye examinations;

receive the customer examination data from the diagnostic centers;

transmit the customer examination data to the practitioner devices associated with the selected eye-care practitioners; and

receive customer evaluation data from the practitioner devices associated with the selected eye-care practitioners;

wherein eye health reports based, at least in part, on the selected eye-care practitioners' review and evaluation of the customer examination data are provided to the customers.

\*\*\*

13. A server for providing services related to eye health and vision examinations, wherein the server is configured to:

permit eye-care practitioners to login to a web-based platform to administer eye examinations to customers over a network in real-time;

track availability data associated with the eye-care practitioners, the availability data indicating a set of eye-care practitioners who are currently logged into the web-based platform and whether each such eye-care practitioner is currently engaged in providing a real-time eye examination through the web-based platform;

receive a request over a network from a diagnostic center to select an eye-care practitioner to administer an eye examination to a customer,

wherein the diagnostic center includes ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examination and being coupled to an equipment controller that is configured to receive instructions for controlling the ophthalmic equipment;

in response to receiving the request, select the eye-care practitioner to administer the eye examination based, at least in part, on analyzing the availability data to identify a subset of eye-care practitioners who are logged into the web-based platform and not currently providing realtime eye examinations;

administer one or more tests to the customer during the eye examination conducted at the diagnostic center utilizing the ophthalmic equipment, the eye examination including an objective portion that utilizes the ophthalmic equipment to derive objective measurements pertaining to the one or more tests and a subjective portion that utilizes an audio response system that is configured to present questions to and receive responses from the customer pertaining to the one or more tests, wherein the subjective portion of the eye examination is administered using an iterative process that includes:

selecting questions to present to the customer based on both the objective measurements derived during the objective portion of the eye examination and the responses that are received from the customer via the audio response system;

based on the responses received from the customer via the audio response system, automatically adjusting ophthalmic equipment

28

utilized in administering the subjective portion of the eye examination; and

determining that the iterative process should be concluded in response to detecting that a particular combination of the responses received from the customer satisfies one or more conditions indicating that sufficient data has been collected for the subjective portion of the eye examination;

receive customer examination data generated by the ophthalmic equipment at the diagnostic center while administering one or more tests pertaining to the eye examination;

transmit at least a portion of the customer examination data pertaining to the one or more tests to a practitioner device associated with the selected eye-care practitioner;

receive customer evaluation data from the practitioner device associated with the selected eye-care practitioner;

wherein an eye health report based, at least in part, on the selected eye-care practitioner's review and evaluation of the customer examination data is provided to the customer.

\*\*\*

25. A server for providing eye health and vision examinations, wherein the server is configured to:

provide a web-based platform that permits asynchronous eye examinations to be conducted over a network, wherein the asynchronous eye examinations are administered at a diagnostic center that includes ophthalmic equipment comprising a set of instruments that are utilized in administering the eye examinations and being coupled to an equipment controller that is configured to receive instructions for controlling the ophthalmic equipment;

administer one or more tests to a customer during an eye examination conducted at the diagnostic center, the eye examination including an objective portion that utilizes the ophthalmic equipment to derive objective measurements pertaining to the one or more tests and a subjective portion that utilizes an audio response system that is configured to present questions to and receive responses from the customer pertaining to the one or more tests, wherein the subjective portion of the eye examination is administered using an iterative process that includes:

selecting questions to present to the customer based on both the objective measurements derived during the objective portion of the eye examination and the responses that are received from the customer via the audio response system;

based on the responses received from the customer via the audio response system, automatically adjusting ophthalmic equipment utilized in administering the subjective portion of the eye examination; and

29

determining that the iterative process should be concluded in response to detecting that a particular combination of the responses received from the customer satisfies one or more conditions indicating that sufficient data has been collected for the subjective portion of the eye examination;

store customer examination data pertaining to the one or more tests that are administered to a customer during the eye examination provided at the diagnostic center to permit the customer examination data to be accessed by eye-care practitioners after the customer has completed the one or more tests;

select an eye-care practitioner to evaluate the stored customer examination data;

transmit a request to the selected eye-care practitioner to evaluate the stored customer examination data;

in response to the eye-care practitioner accepting the request, associate the stored customer examination data with the eye-care practitioner;

provide the selected eye-care practitioner with access to the stored customer examination through the web-based platform; and

receive customer evaluation data from a practitioner device associated with the selected eye-care practitioner;

wherein an eye health report based, at least in part, on the selected eye-care practitioner's review and evaluation of the customer examination data is provided to the customer.

\*\*\*

## THE EXPANDED NATURE AND SCOPE OF THE 20/20 PATENTS

56.     As acknowledged *supra*, the 20/20 Patents stem from the Parent Patent, but include several notable and distinguishing features, such as the requirement for an on-site technician during the tele-optometry examination process, a second remote operator, and including certain equipment and algorithms to assist with the remote eye examination.

57.     Specifically, the '217 Patent includes three additional limitations not found in the '062 Patent: *to wit*, (1) "an onsite device that is operated by an onsite individual located at the diagnostic center;" *Exhibit 4*, 49:30–31; (2) "a second remote device that is operated by a second remote individual;" *id.* at 49:34–35; and (3) "the vision examination equipment at least including an auto-phoropter and eye chart;" *id.* at 49:27–29.

30

58.    Moreover, not only does the '217 Patent include elements that are absent from the '062 Patent, the '217 Patent is broader than the '062 Patent based at least in part on that absence of specific claim language contained in the '062 Patent.

59.    To this end, the '062 Patent includes at least four elements not required by the '217 Patent (or the 20/20 Patents, generally): *to wit*, (1) "track availability data associated with the eye-care practitioners, the availability data indicating a set of eye-care practitioners who are currently logged into the web-based platform and whether each such eye-care practitioner is currently engaged in providing a real-time eye examination through the web-based platform;" ***Exhibit 7***, 48:51–57 and 51:24–29; (2) "wherein an eye health report based, at least in part, on the selected eye-care practitioner's review and evaluation of the customer examination data is provided to the customer." ***Id.*** at 52:15–18; (3) "a subjective portion that utilizes an audio response system that is configured to present questions to and receive responses from the customer pertaining to the one or more tests, wherein the subjective portion of the eye examination is administered using an iterative process that includes: selecting questions to present to the customer based on both the objective measurements derived during the objective portion of the eye examination and the responses that are received from the customer via the audio response system;" ***id.*** at 54:58–67; and (4) "based on the responses received from the customer via the audio response system, automatically adjusting ophthalmic equipment utilized in administering the subjective portion of the eye examination;" ***id.*** at 51:61–64 and 55:1–4.

60.    Notwithstanding the differences between the 20/20 Patents as compared to the Parent Patent, DigitalOptometrics copied 20/20 Vision's proprietary systems and methods for conducting digital eye examinations.

61.     Based on DigitalOptometrics' infringement, 20/20 Vision has been required to retain the undersigned counsel to pursue its interest in this matter, and is obligated to pay the undersigned a reasonable attorneys' fee for their services and to reimburse the undersigned for any costs incurred in connection with said representation.

## COUNT I
### DIRECT WILLFUL INFRINGEMENT OF THE '217 PATENT

62.     20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

63.     DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '217 Patent. Such unlawful conduct continues as of the filing of this Complaint.

64.     Specifically, the Accused System meets all limitations of at least Claim 1 of the '217 Patent. *See **Exhibit 8**, '217 Patent Claim Chart, attached hereto and incorporated by reference.

65.     By making, using, selling, and/or offering for sale the Accused System within the United States, DigitalOptometrics has infringed, and continues to infringe, at least Claim 1 of the '217 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

66.     DigitalOptometrics has knowledge of the '217 Patent at least because of DigitalOptometrics' knowledge of the Parent Patent through previous litigation and, upon information and belief, subsequent tracking of the applications that matured into the 20/20 Patents.

67.     Moreover, 20/20 Vision places the United States and the world at large on notice of its intellectual property rights by listing its patents, including the '217 Patent, on its website located at https://for2020now.com/intellectual-property. Despite DigitalOptometrics' knowledge of the '217 Patent and its infringing activities, DigitalOptometrics has infringned, and continues

to infringe, at least Claim 1 of the '217 Patent by making, using, selling, and/or offering for sale the Accused System. This intentional infringement without regard for 20/20 Vision's patent rights constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C. § 284.

68.     The ongoing and continuous infringement by DigitalOptometrics of the '217 Patent entitles 20/20 Vision to an injunction permanently enjoining DigitalOptometrics from further infringement of 20/20 Vision's patent rights, pursuant to 35 U.S.C. § 283.

69.     20/20 Vision has suffered, and continues to suffer, damages from DigitalOptometrics' infringement of the '217 Patent, and 20/20 Vision is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. § 284 and 285.

## COUNT II
## CONTRIBUTORY PATENT INFRINGEMENT OF THE '217 PATENT

70.     20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

71.     DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '217 Patent. *See Exhibit 8*, attached hereto and incorporated by reference. Such unlawful conduct continues as of the filing of this Complaint.

72.     DigitalOptometrics provides the Accused System to retailers around the United States, including Miami Optical Boutique as noted in ¶ 42, *supra*.

73.     The Accused System utilized by Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics is the same as the Accused System described herein and, is thus, directly infringing the '217 Patent.

74.     The Accused System has no commercial non-infringing uses.

75.     As a result, DigitalOptometrics' actions constitute contributory patent infringement under 35 U.S.C. § 271(c).

76.     As a direct and proximate result of DigitalOptometrics' infringement of the '217 Patent, 20/20 Vision has suffered, and continues to suffer, damages. As a result, 20/20 Vision is entitled to recover damages from DigitalOptometrics to compensate for such infringement in an amount to be determined at trial.

77.     The acts of infringement by DigitalOptometrics have caused and will continue to cause irreparable injury to 20/20 Vision, for which it has no adequate remedy at law, unless and until DigitalOptometrics is enjoined from further infringement by this Court in accordance with 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties at issue, a remedy in equity, such as a permanent injunction, is warranted and would be in the public interest.

78.     20/20 Vision has no adequate remedy at law.

## COUNT III
### INDUCED PATENT INFRINGEMENT OF THE '217 PATENT

79.     20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

80.     DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '217 Patent. *See **Exhibit 8***, attached hereto and incorporated by reference. Such unlawful conduct continues as of the filing of this Complaint.

81.     DigitalOptometrics provides the Accused System to retailers around the United States, including Miami Optical Boutique as noted in ¶ 42, *supra*.

82.    The Accused System utilized by Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics is the same as the Accused System described herein and, is thus, directly infringing the '217 Patent.

83.    On information and belief, DigitalOptometrics provided Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics with instructions, directions, manuals, handbooks, or other such directives on how to use the Accused System in a manner that infringes upon the '217 Patent.

84.    DigitalOptometrics had direct knowledge of the '217 Patent at the time of its implementation of the Accused System.

85.    DigitalOptometrics provided Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics with the Accused System and intended such retailers to operate the same in an infringing manner despite its knowledge of the '217 Patent.

86.    As a result, DigitalOptometrics' actions constitute induced infringement under 35 U.S.C. § 271(b).

87.    As a direct and proximate result of DigitalOptometrics' induced infringement of the '217 Patent, 20/20 Vision has suffered and continues to suffer damage. As a result, 20/20 Vision is entitled to recover damages from DigitalOptometrics to compensate for such infringement, in an amount to be determined at trial.

88.    The acts of induced infringement by DigitalOptometrics have caused and will continue to cause irreparable injury to 20/20 Vision, for which it has no adequate remedy at law, unless and until DigitalOptometrics is enjoined from further infringement by this Court in accordance with 35 U.S.C. § 283. Considering the competitive relationship and balance of

35

hardships between the parties at issue, a remedy in equity, such as a permanent injunction, is warranted and would be in the public interest.

89.     20/20 Vision has no adequate remedy at law.

**COUNT IV**
**DIRECT WILLFUL INFRINGEMENT OF THE '114 PATENT**

90.     20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

91.     DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '114 Patent. Such unlawful conduct continues as of the filing of this Complaint.

92.     Specifically, the Accused System meets all limitations of at least Claim 1 of the '114 Patent. *See Exhibit 9*, '114 Patent Claim Chart, attached hereto and incorporated by reference.

93.     By making, using, selling, and/or offering for sale the Accused System within the United States, DigitalOptometrics has infringed, and continues to infringe, at least Claim 1 of the '114 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

94.     DigitalOptometrics has knowledge of the '114 Patent at least because of DigitalOptometrics' knowledge of the Parent Patent through previous litigation and, upon information and belief subsequent tracking of the applications which matured into the 20/20 Patents.

95.     Moreover, 20/20 Vision places the United States and the world at large on notice of its intellectual property rights by listing its patents, including the '114 Patent, on its website located at https://for2020now.com/intellectual-property. Despite DigitalOptometrics' knowledge of the '114 Patent and its infringing activities, DigitalOptometrics has infringed, and continues to

infringe, at least Claim 1 of the '114 Patent by making, using, selling, and/or offering for sale the Accused System. This intentional infringement without regard for 20/20 Vision's patent rights constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C. § 284.

96.    The ongoing and continuous infringement by DigitalOptometrics of the '114 Patent entitles 20/20 Vision to an injunction permanently enjoining DigitalOptometrics from further infringement of 20/20 Vision's patent rights, pursuant to 35 U.S.C. § 283.

97.    20/20 Vision has suffered, and continues to suffer, damages from DigitalOptometrics' infringement of the '114 Patent, and 20/20 Vision is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. § 284 and 285.

## COUNT V
## CONTRIBUTORY PATENT INFRINGEMENT OF THE '114 PATENT

98.    20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

99.    DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '114 Patent. *See Exhibit 9*, attached hereto and incorporated by reference. Such unlawful conduct continues as of the filing of this Complaint.

100.    DigitalOptometrics provides the Accused System to retailers around the United States, including Miami Optical Boutique as noted in ¶ 42, *supra*.

101.    The Accused System utilized by Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics is the same as the Accused System described herein and, is thus, directly infringing the '114 Patent.

102.    The Accused System has no commercial non-infringing uses.

37

103.    As a result, DigitalOptometrics' actions constitute contributory patent infringement under 35 U.S.C. § 271(c).

104.    As a direct and proximate result of DigitalOptometrics' infringement of the '114 Patent, 20/20 Vision has suffered, and continues to suffer damages. As a result, 20/20 Vision is entitled to recover damages from DigitalOptometrics to compensate for such infringement in an amount to be determined at trial.

105.    The acts of infringement by DigitalOptometrics have caused and will continue to cause irreparable injury to 20/20 Vision, for which it has no adequate remedy at law, unless and until DigitalOptometrics is enjoined from further infringement by this Court in accordance with 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties at issue, a remedy in equity, such as a permanent injunction, is warranted and would be in the public interest.

106.    20/20 Vision has no adequate remedy at law.

<u>COUNT VI</u>
**INDUCED PATENT INFRINGEMENT OF THE '114 PATENT**

107.    20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

108.    DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '114 Patent. *See **Exhibit 9***, attached hereto and incorporated by reference. Such unlawful conduct continues as of the filing of this Complaint.

109.    DigitalOptometrics provides the Accused System to retailers around the United States, including Miami Optical Boutique as noted in ¶ 42, *supra*.

110.    The Accused System utilized by Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics is the same as the Accused System described herein and, is thus, directly infringing the '114 Patent.

111.    On information and belief, DigitalOptometrics provided Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics with instructions, directions, manuals, handbooks, or other such directives on how to use the Accused System in a manner that infringes upon the '114 Patent.

112.    DigitalOptometrics had direct knowledge of the '114 Patent at the time of its implementation of the Accused System.

113.    DigitalOptometrics provided Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics with the Accused System and intended such retailers to operate the same in an infringing manner despite its knowledge of the '114 Patent.

114.    As a result, DigitalOptometrics' actions constitute induced infringement under 35 U.S.C. § 271(b).

115.    As a direct and proximate result of DigitalOptometrics' induced infringement of the '114 Patent, 20/20 Vision has suffered and continues to suffer damage. As a result, 20/20 Vision is entitled to recover damages from DigitalOptometrics to compensate for such infringement, in an amount to be determined at trial.

116.    The acts of induced infringement by DigitalOptometrics have caused and will continue to cause irreparable injury to 20/20 Vision, for which it has no adequate remedy at law, unless and until DigitalOptometrics is enjoined from further infringement by this Court in accordance with 35 U.S.C. § 283. Considering the competitive relationship and balance of

hardships between the parties at issue, a remedy in equity, such as a permanent injunction, is warranted and would be in the public interest.

117. 20/20 Vision has no adequate remedy at law.

**COUNT VII**
**DIRECT WILLFUL INFRINGEMENT OF THE '994 PATENT**

118. 20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

119. DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '994 Patent. Such unlawful conduct continues as of the filing of this Complaint.

120. Specifically, the Accused System meets all limitations of at least Claim 1 of the '994 Patent. *See Exhibit 10*, '994 Patent Claim Chart, attached hereto and incorporated by reference.

121. By making, using, selling, and/or offering for sale the Accused System within the United States, DigitalOptometrics has infringed, and continues to infringe, at least Claim 1 of the '994 Patent literally, *and at an absolute minimum*, under the doctrine of equivalents.

122. DigitalOptometrics has knowledge of the '994 Patent at least because of DigitalOptometrics' knowledge of the Parent Patent through previous litigation and, upon information and belief, subsequent tracking of the applications which matured into the 20/20 Patents.

123. Moreover, 20/20 Vision places the United States and the world at large on notice of its intellectual property rights by listing its patents, including the '994 Patent, on its website located at https://for2020now.com/intellectual-property. Despite DigitalOptometrics' knowledge

40

of the '994 Patent and its infringing activities, DigitalOptometrics has infringed, and continues to infringe, at least Claim 1 of the '994 Patent by making, using, selling, and/or offering for sale the Accused System. This intentional infringement without regard for 20/20 Vision's patent rights constitutes egregious conduct sufficient to establish willful infringement under 35 U.S.C. § 284.

124. The ongoing and continuous infringement by DigitalOptometrics of the '994 Patent entitles 20/20 Vision to an injunction permanently enjoining DigitalOptometrics from further infringement of 20/20 Vision's patent rights, pursuant to 35 U.S.C. § 283.

125. 20/20 Vision has suffered, and continues to suffer, damages from DigitalOptometrics' infringement of the '994 Patent, and 20/20 Vision is thus entitled to compensation and other monetary relief to the extent allowed by law, including pursuant to 35 U.S.C. § 284 and 285.

## COUNT VIII
## CONTRIBUTORY PATENT INFRINGEMENT OF THE '994 PATENT

126. 20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

127. DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '994 Patent. *See **Exhibit 10***, attached hereto and incorporated by reference. Such unlawful conduct continues as of the filing of this Complaint.

128. DigitalOptometrics provides the Accused System to retailers around the United States, including Miami Optical Boutique as noted in ¶ 42, *supra*.

129. The Accused System utilized by Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics is the same as the Accused System described herein and, is thus, directly infringing the '994 Patent.

130. The Accused System has no commercial non-infringing uses.

131. As a result, DigitalOptometrics' actions constitute contributory patent infringement under 35 U.S.C. § 271(c).

132. As a direct and proximate result of DigitalOptometrics' infringement of the '994 Patent, 20/20 Vision has suffered, and continues to suffer, damages. As a result, 20/20 Vision is entitled to recover damages from DigitalOptometrics to compensate for such infringement in an amount to be determined at trial.

133. The acts of infringement by DigitalOptometrics have caused and will continue to cause irreparable injury to 20/20 Vision, for which it has no adequate remedy at law, unless and until DigitalOptometrics is enjoined from further infringement by this Court in accordance with 35 U.S.C. § 283. Considering the competitive relationship and balance of hardships between the parties at issue, a remedy in equity, such as a permanent injunction, is warranted and would be in the public interest.

134. 20/20 Vision has no adequate remedy at law.

**COUNT IX**
**INDUCED PATENT INFRINGEMENT OF THE '994 PATENT**

135. 20/20 Vision re-alleges and re-asserts Paragraph One (1) through Sixty-One (61) of the instant Complaint as if fully set forth herein.

136. DigitalOptometrics has made, used, sold, and/or offered for sale, a system and method for enabling customers to obtain vision and eye health examinations, including the Accused System, that practices at least Claim 1 of the '994 Patent. *See **Exhibit 10***, attached hereto and incorporated by reference Such unlawful conduct continues as of the filing of this Complaint.

137. DigitalOptometrics provides the Accused System to retailers around the United States, including Miami Optical Boutique as noted in ¶ 42, *supra*.

138.    The Accused System utilized by Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics is the same as the Accused System described herein and, is thus, directly infringing the '994 Patent.

139.    On information and belief, DigitalOptometrics provided Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics with instructions, directions, manuals, handbooks, or other such directives on how to use the Accused System in a manner that infringes upon the '994 Patent.

140.    DigitalOptometrics had direct knowledge of the '994 Patent at the time of its implementation of the Accused System.

141.    DigitalOptometrics provided Miami Optical Boutique and other retailers operating in connection with DigitalOptometrics with the Accused System and intended such retailers to operate the same in an infringing manner despite its knowledge of the '994 Patent.

142.    As a result, DigitalOptometrics' actions constitute induced infringement under 35 U.S.C. § 271(b).

143.    As a direct and proximate result of DigitalOptometrics' induced infringement of the '994 Patent, 20/20 Vision has suffered and continues to suffer damage. As a result, 20/20 Vision is entitled to recover damages from DigitalOptometrics to compensate for such infringement, in an amount to be determined at trial.

144.    The acts of induced infringement by DigitalOptometrics have caused and will continue to cause irreparable injury to 20/20 Vision, for which it has no adequate remedy at law, unless and until DigitalOptometrics is enjoined from further infringement by this Court in accordance with 35 U.S.C. § 283. Considering the competitive relationship and balance of

hardships between the parties at issue, a remedy in equity, such as a permanent injunction, is warranted and would be in the public interest.

145. 20/20 Vision has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, 20/20 Vision Center, LLC, respectfully requests this Court to enter judgment in its favor and against Defendant, DigitalOptometrics LLC, on all claims set forth, *supra*, and respectfully requests this Court to:

(a) Enter judgment that Defendant has infringed, and continues to infringe, at least one claim of the '217 Patent in violation of at least one of 35 U.S.C. § 271(a), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(b) Enter judgment that Defendant has infringed, and continues to infringe, at least one claim of the '114 Patent in violation of at least one of 35 U.S.C. § 271(a), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(c) Enter judgment that Defendant has infringed, and continues to infringe, at least one claim of the '994 Patent in violation of at least one of 35 U.S.C. § 271(a), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(d) Enter judgment that Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least one claim of the '217 Patent in violation of at least one of 35 U.S.C. § 271(c), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(e) Enter judgment that Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least one claim of the '114 Patent in violation of at

least one of 35 U.S.C. § 271(c), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(f) Enter judgment that Defendant has contributed to the infringement of, and continues to contribute to the infringement of, at least one claim of the '994 Patent in violation of at least one of 35 U.S.C. § 271(c), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(g) Enter judgment that Defendant has induced infringement of, and continues to induce infringement of, at least one claim of the '217 Patent in violation of at least one of 35 U.S.C. § 271(b), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(h) Enter judgment that Defendant has induced infringement of, and continues to induce infringement of, at least one claim of the '114 Patent in violation of at least one of 35 U.S.C. § 271(b), literally, *and at an absolute minimum*, under the doctrine of equivalents;

(i) Enter judgment that Defendant has induced infringement of, and continues to induce infringement of, at least one claim of the '994 Patent in violation of at least one of 35 U.S.C. § 271(b), literally, *and at an absolute minimum*, under the doctrine of equivalents

(j) Award Plaintiff all available and legally permissible damages and relief sufficient to compensate Plaintiff for Defendant's infringement of the '217 Patent, including to the full extent permitted by 35 U.S.C. § 284, together with costs, attorneys' fees and interest, in amounts to be determined at and, where appropriate, following trial;

45

(k) Award Plaintiff all available and legally permissible damages and relief sufficient to compensate Plaintiff for Defendant's infringement of the '114 Patent, including to the full extent permitted by 35 U.S.C. § 284, together with costs, attorneys' fees and interest, in amounts to be determined at and, where appropriate, following trial;

(l) Award Plaintiff all available and legally permissible damages and relief sufficient to compensate Plaintiff for Defendant's infringement of the '994 Patent, including to the full extent permitted by 35 U.S.C. § 284, together with costs, attorneys' fees and interest, in amounts to be determined at and, where appropriate, following trial;

(m) Declare Defendant's infringement of the '217 Patent to be willful and award Plaintiff treble damages and attorneys' fees in accordance with 35 U.S.C. § 284;

(n) Declare Defendant's infringement of the '114 Patent to be willful and award Plaintiff treble damages and attorneys' fees in accordance with 35 U.S.C. § 284;

(o) Declare Defendant's infringement of the '994 Patent to be willful and award Plaintiff treble damages and attorneys' fees in accordance with 35 U.S.C. § 284;

(p) Immediately and permanently enjoin Defendant, under 35 U.S.C. § 283, from making, using, selling, offering for sale, and/or importing into the United States the Accused System;

(q) Declare this to be an exceptional case under 35 U.S.C. § 285 and award Plaintiff costs, expenses, attorneys' fees, and all other recoverable disbursements in this action; and

(r) Award Plaintiff such other and further relief as may be permitted and is appropriate at law or in equity.

## DEMAND FOR JURY TRIAL

Plaintiff, 20/20 Vision, hereby demands a trial by jury of all issues so triable as a matter of law pursuant to FED. R. CIV. P. 38(b).

Respectfully submitted,

/s/ Emily S. DiBenedetto
Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Plaintiff 20/20 Vision*

OF COUNSEL:
Peter A. Matos
Oliver A. Ruiz
W. John Eagan
Zac Davis
Maximillian S. Matiauda
MALLOY & MALLOY, P.L.
2800 SW Third Avenue
Miami, FL 33129
305-858-8000

Dated: May 21, 2026